378 A.2d 914

**COMMONWEALTH of Pennsylvania**

v.

**Lay Ann JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1976.

Decided Oct. 6, 1977.

---

John R. Cook and John J. Dean, Assistant Public Defenders, Pittsburgh, for appellant.

Robert L. Eberhardt and Charles W. Johns, Assistant District Attorneys, Pittsburgh, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellant was convicted by a jury of possession of narcotic drugs.[1] Post-verdict motions were denied, and on March 26, 1976, appellant was sentenced to serve a two year term of probation and pay a $1,000 fine plus the costs of prosecution. Appellant now contends that the evidence was insufficient to prove possession. We disagree and affirm the judgment of sentence imposed by the lower court.

"In determining whether the evidence is sufficient in law to prove that a defendant is guilty beyond a reasonable doubt of the crime or crimes charged, we must after a verdict of guilty, accept as true all of the evidence, direct or circumstantial, and all *reasonable* inferences arising from the evidence, upon which the trier of facts could properly have based the verdict. *Commonwealth v. Malone*, 444 Pa. 397, 281 A.2d 866 (1971); *Commonwealth v. Petrisko,* 442 Pa.

---

1. Appellant was prosecuted under The Drug, Device, and Cosmetic Act, Act of September 26, 1961, P.L. 1664, § 4(q) [35 P.S. § 780–4(q)], *repealed by* the Act of April 14, 1972, P.L. 233, No. 64, § 43(a) [35 P.S. § 780–143(a)].

575, 275 A.2d 46 (1971)." *Commonwealth v. Fortune*, 456 Pa. 365, 367, 318 A.2d 327, 328 (1974). When viewed in that light, the evidence and all reasonable inferences arising therefrom establish appellant's guilt beyond a reasonable doubt.

In the instant case, no drugs were found in appellant's actual possession; therefore, the Commonwealth proceeded on the theory of constructive possession. "The purpose of the constructive possession doctrine is to expand the scope of possession statutes to encompass those cases where actual possession at the time of arrest cannot be shown but where the inference that there has been actual possession is strong. Whitebread and Stevens, To Have and To Have Not, 58 U.Va.L.Rev. 751 (1972)." *Commonwealth v. Stephens*, 231 Pa.Super. 481, 490–91, 331 A.2d 719, 724 (1974). To prove constructive possession, the Commonwealth is required to demonstrate that the accused had the power to control the contraband and the intent to exercise that power. *E.g., Commonwealth v. Wisor*, 466 Pa. 527, 353 A.2d 817 (1976); *Commonwealth v. Fortune, supra; Commonwealth v. Hicks*, 243 Pa.Super. 171, 364 A.2d 505 (1976); *Commonwealth v. Wilds*, 240 Pa.Super. 278, 362 A.2d 273 (1976). This burden may be sustained wholly by circumstantial evidence. *Commonwealth v. Chenet*, 237 Pa.Super. 226, 352 A.2d 502 (1975).

At trial, the following was established. On May 10, 1971, a confidential informant observed appellant cutting heroin and heard her make a statement to the effect that on the evening of May 11, 1971, she would bring some more heroin to the same location to be cut. Based on this information,[2]

2. This hearsay evidence was elicited by defense counsel. (N.T. 183–84; *see also* N.T. 173–78). From the Commonwealth's perspective, this statement was clearly relevant to prove that appellant entertained the intent to possess the narcotics. "Evidence, [including prior conversations,] which tends to prove intent on the part of the defendant in engaging in claimed conduct is, of course, relevant . . . ." 1 *Wharton's Criminal Evidence*, § 618 (1972). Thus, in considering whether the evidence was sufficient under the totality of the circumstances, as we must, *Commonwealth v. Fortune*, 456 Pa.

Detective Ralph McDaniel obtained a warrant to search the house located at 6934 Hamilton Avenue in Homewood. At approximately 10:00 p.m. on May 11, 1971, appellant parked her automobile in front of the house and entered carrying a white shopping bag. A few moments later, she returned to her car, retrieved a smaller green bag, and reentered the house. During this second trip, appellant glanced furtively about the area and, in the opinion of the detectives, appeared very nervous.

Detective McDaniel and one of his associates, Glen Hores, approached the front door while the remaining detectives surrounded the house to prevent any unauthorized departures. Detective McDaniel moved to a point to the left of the front door, between the door and a large window. Looking through the window, he observed three people in a large room which appeared to be an efficiency type apartment. Kitchen, bedroom, and living room furniture were all contained in the one large room.[3] A man was lying on the bed and another woman was sitting on a stool in a different part of the room. The green shopping bag was at the foot of the bed next to the place where appellant was standing.

Detective Hores knocked on the door and announced his identity and purpose. The male occupant jumped off of the bed and moved toward the green bag. At this point Detective McDaniel shouted to Detective Hores that "they are running" (N.T. 28) and went to the door to help his partner.

Entry was achieved within thirty to sixty seconds. Detective McDaniel observed that appellant was standing near the front door, the man was again lying on the bed and the

365, 318 A.2d 327 (1974), it is proper to consider this statement made to Detective McDaniel.

**3.** This house was owned by appellant's brother, who was out of town on this day, and appellant's mother, who resided at a different location. The room in question opened into a hallway near the front door. Although no one was technically renting any portion of the house, the evidence indicates that several people, including carpenters who were remodeling the second and third floors, had equal access to the room in question. We reject any inference of intent or power to control from the possession of the apartment. *See Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974).

other woman was still sitting on the stool. The green bag was no longer at the foot of the bed.

After appellant examined the warrant, the detectives moved from the hallway into the room and instituted their search. Detective McDaniel began searching a closet approximately five feet away from the bed. In the corner, under a pile of clothes, he discovered a green bag of the same size and shape as the one which he had seen on the bed. This bag contained four packets of a white powdery substance, a strainer, a measuring spoon, a white nylon sock, and two playing cards. Detective Hores, who searched the kitchenette area, found several hand rolled cigarette butts in a purse.

At trial, the four packets of powder were marked Commonwealth's Exhibits Numbers 3 to 6. Expert testimony established that Exhibit Number 3 contained 4.8 grams of a thirty-seven percent heroin mixture; Exhibit Number 5 contained 30.4 grams of a twenty-one percent heroin mixture; and Exhibits Numbers 4 and 6 contained quinine and inert matter. The cigarette butts, Exhibit Number 11, contained .2 grams of marijuana. The Commonwealth's expert witness further testified that heroin sold on the street generally contains only five to nine percent pure heroin.

■ With regard to the marijuana, the evidence at trial established that the purse in which it was found belonged to appellant. Detective Hores testified that appellant stated that the purse belonged to her. Moreover, when the detectives requested the keys to her car, appellant retrieved them from this purse. Because the marijuana was found among appellant's personal effects, in a place normally accessible only to appellant, the jury properly inferred that she had both the power and intent to control the narcotic. *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975); *Commonwealth v. Updegrove*, 223 Pa.Super. 7, 296 A.2d 854 (1972).

■ The only issue with regard to the heroin is whether the jury properly inferred that the bag which appellant took from her car was the same bag which was found to contain the heroin. We find that the inference was proper under the circumstances. These circumstances include the short time periods which elapsed when the officers did not have visual contact; appellant's statement that she would be bringing heroin to the house to be cut combined with the fact that the only heroin found was of such a concentration that it would normally be diluted before retail sale; appellant's nervous actions when she carried the green bag into the house; and the fact that a similar green bag was hidden by one of the occupants as soon as the police announced their presence. Although the evidence of guilt was entirely circumstantial, we find that the theme of guilt flows from and is consistent with all the evidence, and that appellant's guilt was established beyond a reasonable doubt.

The judgment of sentence is affirmed.